[Cite as *State v. Leak*, 2014-Ohio-2492.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| QUAYSHAUN LEAK | : | Case No. 13CA72 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:              Appeal from the Court of Common
                                     Pleas, Case No. 2012CR0568H



JUDGMENT:                            Affirmed/Reversed in Part and
                                     Remanded



DATE OF JUDGMENT:                    June 9, 2014




APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant

JOHN C. NIEFT                        WILLIAM T. CRAMER
38 South Park Street                 470 Olde Worthington Road
Mansfield, OH  44902                 Suite 200
                                     Westerville, OH  43082

*Farmer, J.*

{¶1}  On August 8, 2012, Mansfield Police Officer Ryan Anschutz was dispatched to execute an arrest warrant for appellant, Quayshaun Leak, on a domestic violence charge.  Appellant's vehicle was not at his home, so Officer Anschutz patrolled the streets looking for the vehicle.  He found the vehicle parked on a street near appellant's residence, with appellant seated in the front passenger seat.  Appellant was arrested, and an inventory search of the vehicle was conducted prior to towing.  During the search, a loaded firearm was discovered under the front passenger seat.  Appellant admitted the firearm was his.

{¶2}  On September 10, 2012, the Richland County Grand Jury indicted appellant for carrying a concealed weapon in violation of R.C. 2923.12 and improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16.  Appellant filed a motion to suppress on January 28, 2013, claiming an illegal search of the vehicle.  A hearing was held on April 3, 2013.  By judgment entry filed April 12, 2013, the trial court denied the motion.

{¶3}  On June 12, 2013, appellant pled no contest to both counts and the trial court found him guilty.  By sentencing entry filed August 1, 2013, the trial court sentenced appellant to one year on each count, to be served consecutively, suspended in lieu of thirty months of community control.

{¶4}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶5}   "THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES UNDER THE STATE AND FEDERAL CONSTITUTIONS BY DENYING HIS MOTION TO SUPPRESS A FIREARM."

II

{¶6}   "THE COMMUNITY CONTROL CONDITION PROHIBITING APPELLANT FROM COHABITATING WITH MEMBERS OF THE OPPOSITE SEX IS UNREASONABLE AND OVERBROAD."

III

{¶7}   "THE TRIAL COURT VIOLATED DOUBLE JEOPARDY AND R.C. 2941.25 BY FAILING TO MERGE THE CONVICTION FOR CARRYING A CONCEALED WEAPON AND IMPROPER HANDLING OF A FIREARM IN A MOTOR VEHICLE."

I

{¶8}   Appellant claims the trial court erred in denying his motion to suppress. We disagree.

{¶9}   There are three methods of challenging on appeal a trial court's ruling on a motion to suppress.  First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence.  *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993).  Second, an appellant may argue the

trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶10} Specifically, appellant argues the search was pretextual and the trial court erred in determining that the inventory search was a valid search. During the suppression hearing held on April 3, 2013, the trial court found the following (T. at 16):

> THE COURT: Okay. Based on what I've heard, it sounds like there was probable cause to arrest. The officer, having been told by his dispatcher that there was an outstanding warrant for a domestic violence perpetrator; that the domestic violence perpetrator had the following description, which matched the Defendant; that he had a description of the car, including a North Carolina plate, which matched the Defendant's car.

Probable cause to approach when he verified it was the Defendant and arrested him and then decided he was going to have the car towed. He did a proper inventory search for the tow. So it sounds as if it was a search incident to arrest - - an inventory search incident to towing the car. Therefore, it was an appropriate search of the car, and therefore, I am not suppressing the gun which was found in the car.

{¶11} Generally, factual determinations by the trial court are accepted as issues relating solely to the trier of fact. However, it is still incumbent on this court to determine if those facts are supported by the record.

{¶12} Officer Anschutz testified he was dispatched to the area of Red Oak Trail in reference to an outstanding domestic violence warrant. T. at 4. He was given a description of the suspect and the vehicle he was in, his name, and his approximate location. *Id.* He located appellant via those descriptions, sitting in the vehicle in the front passenger seat. T. at 4-5. Another individual was in the driver's seat. T. at 6. Appellant exited the vehicle and was positively identified and arrested. T. at 5. Officer Anschutz removed the driver from the vehicle and conducted an inventory search of the vehicle after determining the vehicle would be towed. T. at 6. He explained the following (T. at 7):

Q. What was the purpose of that?

A. Procedure is once we call a tow, we conduct an inventory search where we're making note of all valuable items or items that could be, you

know, stolen. It's an inventory of what's kind of in the vehicle to make sure that, you know - -

Q. What's the policy behind that search?

A. The policy is to document all items that are in the vehicle of value and log it on the tow sheet before the tow.

Q. And at the time you conducted this search, the Defendant was arrested and put in your patrol car?

A. Correct.

Q. And is it the policy of the police department to conduct these searches when you're going to have a car towed?

A. Yes.

{¶13} Appellant does not challenge his arrest, but argues the inventory search was a pretext because there were no valid reasons to impound the vehicle. Appellant's Brief at 3. The vehicle was legally parked, appellant was sitting in the passenger seat, and a LEADS check of the driver established the driver was "clean." *Id.*; T. at 10-11.

{¶14} In defense, Officer Anschutz testified he impounded the vehicle because he believed the owner of the vehicle to be appellant, who had just been arrested. T. at 11-12. However, he was not one hundred percent sure that the vehicle belonged to appellant. T. at 12. On cross-examination, Officer Anschutz testified as follows (T. at 13-14):

Q. As you testify here today, did you ever see an arrest warrant?

A. No.

Q. You saw this car. You went up to the car. You're not certain who actually even owns the car, correct?

A. Correct.

Q. I believe you testified that the reason that you arrested - - towed the car was because you believe the car was owned by Quayshaun Leak, correct?

A. Yeah. From my understanding.

Q. You did a search of this vehicle. That was not a search that anybody consented to, correct?

A. Correct.

{¶15} No evidence was presented as to the vehicle's ownership, except for Officer Anschutz's belief at the time of the arrest that appellant was the owner. Also, Officer Anschutz testified he always looks "for evidence of a crime because I didn't know where the domestic violence happened." T. at 12.

{¶16} Although appellant argues Officer Anschutz was not one hundred percent sure of the vehicle's ownership, the record establishes at the time of the arrest, he believed that appellant owned the car. Because the individual who he believed to be the owner of the vehicle had just been arrested, Officer Anschutz decided to impound the vehicle which was done in accordance with department policy. *South Dakota v. Opperman,* 428 U.S. 364 (1976).

{¶17} The facts sub judice support the officer's belief that appellant was the owner of the vehicle, and appellant was personally identified in relation to this specific vehicle. Of further consequence, the immediate ownership may not have been available because the vehicle had an out-of-state registration.

{¶18} Although the officer may have been wrong in deducing that appellant owned the vehicle, the officer's subjective belief was sufficient to establish the legitimacy of the law.

{¶19} Upon review, we find the trial court did not err in denying appellant's motion to suppress.

{¶20} Assignment of Error I is denied.

II

{¶21} Appellant claims the trial court's imposition of a community control sanction that he "not cohabit with persons of the opposite sex who are not your spouse" is overbroad and unreasonable. We agree.

{¶22} The imposition of community control sanctions lies in a trial court's sound discretion. *Lakewood v. Hartman,* 86 Ohio St.3d 275 (1999). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983). However, a "trial court's discretion in imposing probationary conditions is not limitless." *State v. Talty,* 103 Ohio St.3d 177, 2004-Ohio-4888. As explained by the *Talty* court at ¶ 12-13:

We stated that courts must "consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Jones,* 49 Ohio St.3d at 53, 550 N.E.2d 469.\*\*\*

In addition to considering whether a condition relates to these statutory goals, we observed that probation conditions "cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty." *Id.* at 52, 550 N.E.2d 469.

{¶23} The *Talty* court further explained at ¶ 16: "Thus, *Jones* stands for the proposition that probation conditions must be reasonably related to the statutory ends of probation and must not be overbroad. Because community control is the functional equivalent of probation, this proposition applies with equal force to community-control sanctions."

{¶24} There is nothing in the record to support a nexus between the complained of sanction imposed and the offenses in this case (carrying a concealed weapon and improper handling of a firearm in a motor vehicle). *State v. Lacey,* 5th Dist. Richland No. 2005-CA-119, 2006-Ohio-4290.

{¶25} Upon review, we find the trial court abused its discretion in imposing the complained of community control sanction.

{¶26} Assignment of Error II is granted.

III

{¶27} Appellant claims his convictions for carrying a concealed weapon and improper handling of a firearm in a motor vehicle violated the doctrine of double jeopardy and R.C. 2941.25.

{¶28} R.C. 2941.25 governs multiple counts and states the following:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶29} In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus, the Supreme Court of Ohio held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. *(State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)"

{¶30} During the June 12, 2013 plea hearing, defense counsel addressed the multiple counts issue (T. at 31-32):

MS. BLAZEF: In addition, I noted on that entry that it indicates a potential maximum sentence of three years. I'm not sure if those two charges are allied offenses for purposes of sentencing. I'll have additional time to take a look at it when we get back at sentencing, but I just wanted to bring that to your attention.

THE COURT: In the past, they've been found otherwise.

MS. BLAZEF: That's fine.

THE COURT: Carrying a concealed weapon, having it in the car is the same thing.

MS. BLAZEF: That's fine, Your Honor. I just wanted to bring that to your attention.

THE COURT: I believe they can be treated as two, but I will treat it as one.

MS. BLAZEF: Thank you, Judge.


{¶31} The trial court then accepted appellant's no contest pleas. *Id.* at 32-33. During the sentencing hearing, the trial court did not merge the two counts and "treat it as one," but sentenced appellant to one year on each count, to be served consecutively, suspended in lieu of thirty months of community control. July 31, 2013 T. at 43.

{¶32} Upon review, we find the trial court erred in not merging the two offenses as it indicated it would during the plea hearing.

{¶33} Assignment of Error III is granted.

{¶34} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed in part and reversed in part.

By Farmer, J.

Baldwin , J. concur and

Hoffman, P.J., concurs in part and dissents in part.

SGF/sg 520

*Hoffman, P.J., concurring in part and dissenting in part*

**{¶35}** I concur in the majority's analysis and disposition of Appellant's second and third assigned errors. I respectfully dissent from the majority's disposition of the first assignment of error.

**{¶36}** As set forth by the majority, this Court must determine whether the facts, as determined by the trial court, are supported by the record.

**{¶37}** Officer Anschutz testified at the April 3, 2013 suppression hearing as follows:

**{¶38}** "Q. Were you working on August 8, 2012?

**{¶39}** "A. Yes.

**{¶40}** "Q. And what happened with respect to the defendant, Quayshaun Leak?

**{¶41}** "A. We were dispatched to the area of Red Oak Trail, Riva Ridge, in reference to an individual who had a domestic violence warrant out of Richland County Sheriff's Office. We had a description of the vehicle that the suspect was supposed to be in, a description of the suspect, Mr. Leak, and his location."

**{¶42}** Tr. at 4.

**{¶43}** Officer Anschutz did not testify to what, if any, attempt he made to learn who owns the vehicle. He testified the LEADS check of the person in the driver's side of the vehicle was "clean," and the only reason he towed the car was the arrest of Appellant, whom he thought owned the vehicle. Tr. at 11-12.

**{¶44}** While Officer Anschutz testified he believed Appellant owned the vehicle, I find the facts belie such belief.

**{¶45}** Officer Anschutz was given a description of the suspect and the vehicle he was in.[1] Being "in" a vehicle does not establish ownership. When located, Appellant was a passenger in the legally parked, described vehicle with another person in the driver's seat. His status as a passenger in the vehicle weakens any inference of ownership. I find the officer's subjective belief Appellant owned the vehicle unsupported by the record.[2]

**{¶46}** Given the fact the vehicle was legally parked; no restriction was found on the license of the person found in the driver's seat; there was no evidence to support the belief Appellant owned the vehicle; and the state of Ohio's representation in its brief it was the policy of the Mansfield Police Department to impound a vehicle when the "driver" was arrested[3] - all lead me to conclude the vehicle was improperly impounded and the trial court improperly found the search and seizure valid as an inventory search.

_____
HON. WILLIAM B. HOFFMAN

---

[1] The state of Ohio's brief states "Officer Anschutz testified that the car Appellant was in was the car that dispatch had relayed as the Appellant's vehicle." (See Appellee's Brief at p. 4). This is a mischaracterization of his testimony.

[2] The subjective intentions of an arresting officer are irrelevant in determining the validity of an arrest. *Gerstein v. Pugh* 420 U.S. 103 95 S.Ct. 854, 43. L. Ed. 2d 54(1975). Probable cause is not subjective. *State v. Abrams*, 12th Dist. No. CA2007-03-040, 2008-Ohio-94. Rather, probable cause is viewed under an objective standard and is present where, under the facts and circumstances within an officer's knowledge, a reasonably prudent person would believe the arrestee has committed a crime. Id. In making this determination, we examine the totality of the facts and circumstances. *State v. Christopher*, 12th Dist., No. CA 2009 08-041, 2010-Ohio-1816.
[3] Appellee's brief at pgs. 4-5.